Argued and submitted May 15, reversed and remanded December 17, 1997

## Richard L. FANNING
and Tamara S. Lee, aka Tamara S. Fanning,
dba Sea Green,
*Appellants,*

*v.*

## The OREGON DIVISION OF STATE LANDS,
*Respondent.*

(94-CV430; CA A91084)

950 P2d 353

Karl G. Anuta argued the cause for appellants. With him on the briefs was Larry N. Sokol & Associates, P.C.

Stephanie L. Striffler, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiffs leased coastal land from the Oregon Division of State Lands (DSL) to harvest sea kelp. The lease contained a minimum harvest requirement and provided for termination of the lease in the event of failure to comply with the minimum. The lease also expressly authorized DSL to elect not to terminate the lease in such circumstances. When plaintiffs failed to meet the harvest minimum several years running, DSL terminated the lease. Plaintiffs initiated this action for breach of contract and fraud, contending that DSL previously had agreed not to enforce the harvest minimum for another year. The trial court granted a motion to dismiss the breach of contract claim and entered summary judgment for DSL on the fraud claim. We reverse and remand.

■   We first address the dismissal of the breach of contract claim, assuming the truth of all factual allegations and giving plaintiffs the benefit of all reasonable inferences from those allegations of fact. *Fessler v. Quinn*, 143 Or App 397, 400, 923 P2d 1294 (1996). The State Land Board, through DSL, manages submerged and submersible lands owned by the State of Oregon. Pursuant to ORS 274.885 (1991), ORS 274.885 remained unchanged during the relevant time of the lease, 1988 to 1992. We cite to the 1991 statute for convenience. ORS 274.885 was amended in 1993, omitting the minimum harvest requirement. DSL leases submerged lands owned by the state for the purpose of harvesting kelp and other seaweed. The statute provides, in part:

> "The lease may be for a term of not to exceed 50 years and shall provide for the payment to the State of Oregon of a sum to be fixed by the division for all kelp or other seaweed harvested under the lease, to be paid at the end of each year. The lease shall also be conditioned that for the failure to harvest at least 1,000 tons of kelp or other seaweed, within any one year, from the territory described in the lease, the lease shall be forfeited, at the division's option."

ORS 274.885(2) (1991).

In 1988, plaintiffs entered into a lease with DSL to harvest sea kelp on state-owned coastal lands. The term of

the lease was to run from July 1, 1988, to December 31, 1992, with an option to renew for an additional ten years, as long as plaintiffs remained in compliance with all lease terms. Consistent with ORS 274.885(2) (1991), the lease provided:

> "ORS 274.885(2) provides that kelp harvest leases shall be conditioned that for the failure to harvest at least 1,000 tons of kelp within any one year, the lease shall be forfeited, at the division's option. The STATE hereby agrees that, due to the experimental nature of this lease, the division will not exercise its option to require forfeiture for failure to harvest 1,000 tons of kelp during the first year of harvest. This requirement will be reviewed on an annual basis after the first year."

The lease further provided that it may be "changed, altered or amended only by mutual written consent of the parties."

As the lease expressly anticipated, plaintiffs did not meet the 1,000-ton harvest minimum during the 1988-89 season, and DSL elected not to exercise its option to require forfeiture. During the next two harvest seasons, plaintiffs again failed to meet the harvest minimum, and DSL again elected not to exercise its option to require forfeiture. During the 1991-92 season—the last under the original term of the lease—plaintiffs did not meet the harvest minimum and, according to the allegations in the complaint, DSL again elected not to exercise its option to require forfeiture. When plaintiffs attempted to exercise their renewal option in 1992, DSL refused, declaring instead that the option to renew was forfeited by the failure of plaintiffs to meet the harvest minimum.

In their breach of contract claim against DSL, plaintiffs allege—in addition to the foregoing facts—that DSL's declaration of forfeiture and its failure to authorize the renewal of the lease constituted a breach of the lease, because DSL had "waived the 1,000 ton annual harvest requirement for each year, including the 1991-92 season." DSL moved to dismiss the claim under ORCP 21 A(8), arguing that plaintiffs had failed to state a claim. According to DSL, a decision not to elect to exercise the option to require forfeiture constitutes a "change[ ], alter[ation] or amend[ment]" of the lease, which may be accomplished only by mutual written consent.

Because there was no written confirmation of its election not to require forfeiture, DSL concluded, plaintiffs' contract claim fails as a matter of law. The trial court agreed and, on that ground, dismissed the breach of contract claim.

On appeal, plaintiffs argue that their complaint alleged all the necessary elements of a breach of contract claim. The question whether there had been a written modification, plaintiffs contend, is a proverbial red herring, because their claim does not rest on an asserted modification of any term of the lease agreement. They contend that their claim instead expressly is based on the terms of the agreement itself, which authorizes DSL to elect not to require forfeiture when the minimum harvest requirement has not been met. Having alleged that DSL expressly agreed not to require forfeiture for the 1991-92 season and that DSL then breached that agreement by declaring the lease forfeited, plaintiffs contend that they have alleged all that the law requires.

DSL's position on appeal repeats its arguments to the trial court. It characterizes any election not to exercise its option to require forfeiture under the lease as a modification of the lease, which, it contends, must be in writing to be effective. Because there was no written election in this case, DSL contends, there could have been no breach of the lease.

We agree with plaintiffs that the trial court erred in adopting DSL's characterization of its election not to exercise its option to require forfeiture as a "modification" of the lease. The lease provided that it may not be "changed, altered or amended" without a written agreement to that effect. An election not to require forfeiture, however, changed nothing in the lease. To the contrary, the agreement explicitly provided that DSL "will not exercise its option to require forfeiture for failure to harvest 1,000 tons of kelp during the first year of harvest" and then explicitly authorized it to do the same each year thereafter. The lease did not expressly require that the election itself be expressed in writing. To require *that* would amount to changing, altering or amending the agreement.

DSL argues that any agreement not to require forfeiture is unenforceable under *Wegroup PC v. State of Oregon*, 131 Or App 346, 885 P2d 709 (1994), because a state agency

cannot waive compliance with a contract requirement that is imposed by statute. We are not persuaded. *Wegroup* stands for the proposition that a state agency cannot, by "custom and practice," waive a requirement of statute or administrative rule. *Id.* at 353. In this case, DSL has waived no statutory requirement. ORS 274.885(2) (1991) expressly authorizes DSL to elect not to require forfeiture for failure to comply with the minimum kelp harvest requirement, and, according to the allegations of the complaint, DSL expressly exercised that authority with respect to the 1991-92 minimum harvest requirements. DSL insists that the statute only authorizes DSL to elect not to forfeit *at the end of each year*, after the harvest has been completed. It cites no statutory language or other authority for the assertion. In any event, the complaint does not state precisely whether DSL elected not to forfeit before or after the end of the season, only that it did expressly elect not to forfeit for failure to meet the harvest minimum for the 1991-92 season. Given that any ambiguities are resolved in favor of plaintiffs, DSL's argument is unavailing. We conclude, therefore, that the trial court erred in dismissing plaintiffs' breach of contract claim.

■      We turn to the trial court's entry of summary judgment on plaintiffs' fraud claim. We review the trial court's decision to determine whether there is any genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). In their complaint, plaintiffs alleged that DSL falsely represented that the 1,000-ton minimum harvest requirement would not be enforced during the 1991-92 harvest season, that it would renew the lease agreement as plaintiffs requested and that plaintiffs reasonably relied on those representations to their damage. DSL answered and moved for summary judgment, asserting that plaintiffs' fraud claim failed as a matter of law because, among other things, plaintiffs did not rely on the alleged false representations, and, if they did, they did not rely on them reasonably. In response, plaintiffs asserted that they relied on the misrepresentations in failing to harvest more than they did. In addition, they offered evidence that they rejected a $250,000 offer to purchase their lease, because they considered the price to be too low in the face of

representations from DSL that the lease would be renewed for a 10-year period. They also offered evidence that they instead took out loans and spent time and money in anticipation of the next year's harvest.

On appeal, plaintiffs contend that there are genuine issues of material fact as to whether they reasonably relied on DSL's representations that the minimum harvest requirements would not be enforced and that the lease would be renewed. DSL asserts that plaintiffs cannot have relied on the alleged misrepresentations in failing to harvest more kelp, because the undisputed evidence shows that the alleged misrepresentations were made *after* the end of the harvest season. As for the rejected purchase offer, DSL contends that the *real* reason that plaintiffs rejected the offer was that they had a "no-shop" agreement with another party and could not deal with anyone else until the agreement expired. In any event, DSL argues, plaintiffs could not reasonably rely on the alleged misrepresentations, because DSL's alleged agreement not to require forfeiture on the ground of the minimum harvest requirement was unenforceable as a matter of law under ORS 274.885(2) (1991).

The evidence in the summary judgment record shows that there is at least a genuine issue of material fact as to whether plaintiffs relied on the alleged misrepresentations of DSL. There is evidence that they turned down a purchase offer because of the assurances of DSL that the lease would be renewed and, therefore, would be worth more. There is, as DSL points out, evidence of other reasons for the rejection of the offer. That is precisely the sort of dispute for the finder of fact to resolve.

As for DSL's argument that plaintiffs could not rely reasonably on any assurances from DSL, we note that it is predicated once again on the erroneous assumption that electing not to require a forfeiture somehow violates ORS 274.885(2) (1991), when the statute expressly authorizes DSL to do just that. We conclude therefore that the trial court erred in entering summary judgment for DSL on plaintiffs' fraud claim.

Reversed and remanded.